**HART HOLDING COMPANY INCORPORATED and Reeves Industries, Inc., Plaintiffs,**

**v.**

**DREXEL BURNHAM LAMBERT INCORPORATED, Guildford Capital, Glencoe Investors and Raleigh Investment Management, Defendants.**

**Civ. A. No. 11514.**

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 18, 1991.
Decided: Feb. 13, 1991.

Stephen E. Jenkins and Keith R. Sattesahn, of Ashby, McKelvie & Geddes, Wilmington; Richard J. Wiener, and Debra L. Brown of Cadwalader, Wickersham & Taft, New York City, of counsel, for plaintiffs.

Martin P. Tully of Morris, Nichols, Arsht & Tunnell, Wilmington; Daniel R. Murdock of Donovan, Leisure, Newton & Irvine, New York City, of counsel, for defendant Guildford Capital.

Robert K. Payson and James F. Burnett of Potter Anderson & Corroon, Wilmington, for defendant Raleigh Inv. Management.

## OPINION

ALLEN, Chancellor.

In this action Hart Holding Company Incorporated and Reeves Industries, Inc. seek, *inter alia*, the cancellation of certain shares of Reeves common stock owned by certain of the defendants. Reeves is a Delaware corporation and its stock has a legal presence in this jurisdiction. 8 *Del.C.* § 169.

The gist of the complaint is that the stock in question was issued on the exercise of warrants that were obtained by defendants as the fruits of a conspiracy involving fraud and breach of fiduciary duty. This alleged conspiracy occurred in connection with Hart's buyout of all of the stock of Reeves. More particularly, plaintiffs allege that Drexel Burnham Lambert, Incorporated, certain of its former officers including Michael Milken and Lowell Milken (who are not named as defendants), and certain limited partnerships affiliated with Drexel or Messrs. Milken, conspired to cause Hart to agree to the issuance of certain warrants to purchase common stock of Reeves.[1] This agreement was allegedly induced by false statements knowingly made by Drexel agents. The warrants in question were promptly placed into the hands of the alleged co-conspirators Guildford Capital, Glencoe Investors, and Raleigh Investment Management, who are alleged to be creatures formed and controlled by Drexel or its officers.

Defendants Guildford Capital and Raleigh Investment Management each are California limited partnerships with offices in Beverly Hills. They have now moved pursuant to Rule 12(b)(2) to be dismissed from this action, asserting that the court lacks personal jurisdiction over them. In response, plaintiffs have sought discovery of Guildford and Raleigh and of third parties designed, they say, to show that the factual predicate for service of process[2] is sound and that Guildford and Raleigh are properly subject to the jurisdiction of this court. Guildford has now countered with the present motion for a protective order under Rule 37. It seeks an order "that discovery not be had by plaintiffs in connection with Guildford's motion to dismiss the complaint ... for lack of personal jurisdiction." Motion for Protective Order (Docket # 43).

Guildford's Rule 12(b)(2) motion was originally supported by an affidavit, which was withdrawn when Guildford sought to preclude plaintiffs from taking discovery in connection with adjudication of the 12(b)(2) motion. Guildford now asserts that its Rule 12(b)(2) motion is directed to the face of the complaint alone. Guildford accepts the allegations of the complaint as true and claims that those allegations show no basis for this court to assert personal jurisdiction over it. Accordingly, it continues, plaintiffs ought not to be permitted to burden it with discovery responses in this action or to go on a "fishing expedition" in search of

---

1. The warrants in question were issued originally by a Hart subsidiary, A.R.A. Manufacturing Company of Delaware. Through a series of mergers these warrants were later converted into Reeves warrants and, later still, Reeves common stock. *See* pp. 540–541.

2. Process was purportedly served pursuant to Delaware's long-arm statute, 10 *Del.C.* § 3104.

some connection among defendant, the jurisdiction, and the events out of which the claim arises.

## I.

 In attempting to restrict consideration of its motion to the face of the complaint, Guildford has, in my opinion, fundamentally misunderstood the process by which a court determines a defendant's amenability to suit. It apparently has confused that process with the procedure for adjudicating a motion to dismiss under Rule 12(b)(6). The two types of motions to dismiss, however, are very different. When a defendant seeks dismissal for failure to state a claim upon which relief can be granted, the court accepts as true all the well pleaded facts and takes no evidence with respect to them. The motion, thus, presents only a legal question. A motion under Rule 12(b)(2), however, presents a factual matter, not a legal question alone. That factual question will concern the connection that the defendant has had, directly or indirectly, with the forum. The legal questions presented—whether that connection constitutes "doing business," whether it satisfies some aspect of a long-arm statute, or whether the assertion of personal jurisdiction conforms to conventional notions of fair play and substantial justice—cannot be resolved until the court determines these predicate factual matters.

A court cannot grant a motion under Rule 12(b)(2) simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process.[3] It is this fact that defendant appears not to understand.

The leading commentators state without reservation:

the complaint need not allege the manner in which service is to be accomplished or the basis for jurisdiction over defendant's person or property.

5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1206, at 96 (citing cases at n. 22) (1990) [Hereinafter, "Wright and Miller"].

A slightly fuller statement by these same authorities reflects the limited role of pleadings in determining a motion to dismiss under Rule 12(b)(2):

A motion to dismiss under Rule 12(b)(2) raises a defense by way of abatement. Inasmuch as the motion always attacks the actual existence of personal jurisdiction and because there is no requirement that personal jurisdiction be alleged, the pleading often is of little or no direct value on the motion. In some cases, however, the allegations do bear on questions of agency or the nexus between the claim or the parties and the forum for purposes of determining the applicability of a long-arm statute. In the typical case, however, the pleader, having the burden of establishing jurisdiction, often will find it necessary to use extra-pleading material.

5A Wright and Miller § 1363, at 458–59. In this statement, the burden that the pleader is said to bear does not refer to a pleading burden, but rather to the evidentiary burden of proof on the issue of defendant's amenability to suit.

Defendant has cited no case, and our research finds none, in which a court has granted a motion to dismiss under Rule

---

**3.** Rule 8 defines the requisites of a well-pleaded complaint. It provides that:

A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment.

Rule 8 contains no requirement that a plaintiff allege facts showing a defendant's amenability to suit in the jurisdiction. Absent from Chancery Rule 8 is the provision in Federal Rule 8 that requires, "a short and plain statement of

the grounds upon which the court's jurisdiction depends." But, while this difference might present a ground to argue that our law treats the pleading of personal jurisdiction over defendants differently than does federal law, in fact there appears to be no such distinction. It is settled under federal law that Federal Rule 8 addresses only subject matter jurisdiction, not personal jurisdiction. *See, e.g., Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87 (2nd Cir. 1971).

12(b)(2) without affording to plaintiff the opportunity to submit evidence.[4]

Thus, I conclude, it is not open to defendant to restrict a Rule 12(b)(2) motion to the face of the complaint. *Accord Nehemiah v. Athletics Congress of the U.S.A.*, 765 F.2d 42, 48 (3rd Cir.1985). But to say that a plaintiff has no burden to plead facts establishing a defendant's amenability to suit is only to make a statement concerning the requisites of a well-pleaded complaint. It is not to say that plaintiff does not bear the burden to establish defendant's amenability to suit, if that issue is raised by a motion. A plaintiff has such burden. 5A Wright and Miller § 1351 (citing cases at n. 27).

■ The trial court is vested with a certain discretion in shaping the procedure by which a motion under Rule 12(b)(2) is resolved. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). Since the central question is one of fact, the court may hold a preliminary hearing and determine the necessary facts, or it may decide the matter on affidavits. *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir.1989). It has discretion to delay decision until further discovery is completed. *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir.1979), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977). If the motion is decided on affidavits, the court should require only that plaintiff make out a *prima facie* case. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986); *Cutco Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2nd Cir. 1986). If, however, the motion is decided upon testimony, whether at trial or at a pre-trial evidentiary hearing, plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Travellers In-*

dem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir.1986).

■ As a plaintiff does have an evidentiary burden, she may not be precluded from attempting to prove that a defendant is subject to the jurisdiction of the court, and may not ordinarily be precluded from reasonable discovery in aid of mounting such proof. *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254, 255 (1st Cir.1966); *see* 5A Wright and Miller § 1351 n. 33. Only where the facts alleged in the complaint make any claim of personal jurisdiction over defendant frivolous, might the trial court, in the exercise of its discretionary control over the discovery process, preclude reasonable discovery in aid of establishing personal jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 708, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). In *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357 (3rd Cir.1983), the Court of Appeals for the Third Circuit stated the general rule:

> Where the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.

723 F.2d at 362.[5]

It is relatively rare but not unheard of that a court will require a plaintiff to attempt to make out its *prima facie* factual showing of defendant's amenability to suit without the benefit of discovery. *See, e.g., Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982); *Daval Steel Products v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159 (S.D.N.Y. 1989); *Singer v. Bell*, 585 F.Supp. 300 (S.D. N.Y.1984); *Grove Valve & Regulator Co., Inc. v. Iranian Oil Services, Ltd.*, 87 F.R.D. 93 (S.D.N.Y.1980). While in each of these cases the court considered matters outside of the pleading, in each instance the court found that plaintiff's assertion of

---

4. A number of cases—but a substantial minority—do preclude discovery on a Rule 12(b)(2) motion, but none require the pleading itself to withstand 12(b)(2) analysis without plaintiff having the right to submit evidence. *See, e.g., Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir.1982) and other cases cited at page 7.

5. *See also Surpitski*, 362 F.2d at 255; *Accord Peterson v. Spartan Indus., Inc.*, 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 908, 310 N.E.2d 513, 516 (1974).

personal jurisdiction lacked that minimal level of plausibility needed to permit discovery to go forward. No purpose is here served by detailing the facts presented in those cases; questions of this kind are inherently highly particular. But it is notable that, in *Wyatt v. Kaplan*, in approving the granting of a motion to dismiss under Rule 12(b)(2) where the plaintiff had been denied an opportunity to take depositions, the Fifth Circuit Court of Appeals strongly endorsed the practice that ordinarily permits discovery on such a motion:

> When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss.... In appropriate cases we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that plaintiff was improperly denied discovery [citing cases]. When, as in this case, the jurisdictional question intertwines with the merits of the case ... some discovery on the merits may be necessary and general discovery may be permitted. 4 *Moore's Federal Practice* ¶ 26.70[2] at 26–520.

*Wyatt v. Kaplan*, 686 F.2d at 283.

## II.

I turn then briefly to the allegations of the complaint to ascertain whether they supply the necessary minimum color to the assertion of amenability to suit to permit plaintiffs access to the processes of discovery customarily available to parties to litigation.

The following facts appear from the complaint.

In February, 1986, Hart was offered the opportunity to purchase Reeves—then known as Newreeveco, Incorporated—in connection with a leverage buyout of that firm. Hart immediately commenced discussions with Drexel and other investment banking firms concerning financing the acquisition. Hart proposed to use only subordinated debt to finance the acquisition, and, from the outset. Hart informed Drexel that it wanted to avoid the use of any form of equity to compensate Drexel for its services or to finance the transaction.

Plaintiffs allege that in order to get the assignment as advisor and underwriter of the debt offering, Drexel falsely represented that it would structure the financing so as not to use any equity for either purpose.

On March 6, 1986, Hart entered into a binding merger agreement with Reeves. Under the agreement, Schick Acquisition Corp. ("SAC"), an indirect subsidiary of Hart (which was then known as Schick, Incorporated), was to merge into Newreeveco. The merger agreement provided for the closing to take place within sixty days of the date of the agreement. Plaintiffs filed several documents with the Secretary of State of Delaware in connection with the merger, including: (1) on February 19, 1986, they filed a certificate incorporating SAC, a wholly owned subsidiary of A.R.A. Manufacturing Company of Delaware, Inc. ("ARA"), which, in turn, was a wholly owned subsidiary of Hart; (2) on May 6, 1986, they filed a certificate of merger, merging SAC into Newreeveco, Inc.; (3) on April 28, 1986, they filed a certificate amending the corporate charter of ARA. Cplt. ¶ 68. Plaintiffs allege that these filings were all induced by the actions of Drexel and its co-conspirators, including Guildford.

After Hart signed the merger agreement, plaintiffs claim that Drexel and its co-conspirators took advantage of Drexel's control of the transaction and Drexel's dominance in the market for high yield bonds to exact additional, excessive compensation for placing the securities. At the last moment, so to speak, Drexel falsely insisted that it could not sell the subordinated debt to institutional investors unless it also offered them stock warrants. Drexel also demanded that Hart issue warrants directly to it as additional compensation for services.

Hart asserts that it was forced by circumstances to accede to Drexel's demands. Hart agreed to issue warrants (the "Underwriting Warrants") to the purchasers of the debt granting them a right to purchase shares equal to approximately 10% of the shares of Hart's ARA subsidiary. Hart also was required to agree to enhance

Drexel's compensation by issuing warrants to Drexel granting it a right to purchase shares equal to approximately 3% of the shares of this merger subsidiary. The terms of the warrants were dictated by an attorney representing Drexel.[6]

On May 6, 1986, the day of the merger between SAC and Newreeveco, "Drexel placed with Guildford 771,587 warrants to purchase ARA common stock." Cplt. ¶ 16. The limited partners of Guildford allegedly include: Michael Milken, several other Drexel officers and employees, the attorney who negotiated the terms of the warrants, and several partnerships owned by Milken and other Drexel employees. Drexel allegedly concealed from Hart the fact that Guildford was owned by Drexel officers and persons and entities closely associated with them. Later Guildford transferred some of these warrants to Glencoe, an affiliated Delaware limited partnership. Still later the warrants were exercised causing Reeves to issue common stock.

On or about May 6, 1986, Raleigh "acquired as part of Drexel's placement agent compensation" warrants to purchase common stock of Schick Incorporated and warrants for the purchase of ARA common stock. Cplt. ¶ 21. The general partners of Raleigh were officers of Drexel, and the limited partners were Drexel Investors Corporation (a sister company to Drexel Burnham Lambert) and two limited partnerships owned at least in part by officers of Drexel.

Plaintiffs claim that the foregoing constitutes a breach of fiduciary duty and breach of contract by Drexel, and that Guildford, Raleigh, and Glencoe aided and abetted Drexel's breaches of duty. Plaintiffs seek cancellation of the shares issued to Guildford and Raleigh pursuant to the later exercise of the warrants, and disgorgement of excess fees and profits realized from the alleged wrong.

### III.

Is the implicit claim by plaintiffs that Guildford is amenable to service of process under the Delaware long-arm statute so palpably unsustainable that it must be characterized as frivolous and plaintiffs' right to discovery foreclosed as potentially abusive?[7]

There is no doubt that jurisdiction over defendant Drexel Burnham is valid in this jurisdiction; it is a Delaware corporation. The question presented on the forthcoming 12(b)(2) motion is whether that jurisdiction extends to an alleged conspirator who acquired property as part of the alleged conspiracy. In my opinion, enough has been

---

6. In a later merger, the ARA warrants were converted into an equal number of warrants to buy Reeves stock. More precisely, on March 30, 1988, ARA was merged into Newreeveco, and on June 3, 1988, Newreeveco's name was changed to Reeves Industries, Inc. Cplt. ¶ 47. The warrants were exercised during the period from January 1, 1990 through March 23, 1990. *Id.*

7. The statute in question provides in pertinent part as follows:

(b) The following acts constitute legal presence within the state. Any person who commits any of the acts hereinafter enumerated thereby submits himself to the jurisdiction of the Delaware courts and is deemed thereby to have appointed and constituted the Secretary of State of this State his agent for the acceptance of legal process in any civil action against such nonresident person arising from the following enumerated acts.

\* \* \* \* \* \*

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

\* \* \* \* \* \*

10 *Del.C.* § 3104.

pleaded to conclude, on this preliminary motion, that an assertion that Guildford is amenable to suit here is not frivolous.

At least two non-frivolous theories of personal jurisdiction appear tenable. First, in an action for cancellation of stock issued by a Delaware corporation, it can be asserted that the legal situs of the stock in Delaware (8 *Del.C.* § 169) itself creates a sufficient connection among the jurisdiction of incorporation; the person claiming stockholder status; and the subject matter of the suit to justify litigation of such claim in the jurisdiction of incorporation. This possibility was left open by the United States Supreme Court in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and explicitly by the Delaware Supreme Court in *Instituto Bancario Italiano SpA v. Hunter Engineering Co. Inc.,* Del.Supr., 449 A.2d 210 (1982), although the extended obiter dicta of Justice Quillen in that opinion would tend to discourage a proponent of the position. Nevertheless, the reservation of the point in *Instituto Bancario Italiano* after such an elaborate exposition would itself suggest that what is left cannot be thought frivolous.[8]

The second non-frivolous theory upon which personal jurisdiction might be found to be sound is the conspiracy theory. Under limited circumstances, one who herself has not acted in or created an effect within the jurisdiction may be subject to suit there when:

the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state

was a direct and foreseeable result of the conduct in furtherance of the conspiracy. *Instituto Bancario Italiano,* 449 A.2d at 225. If such a showing can be made, a basis will have been shown to employ the Delaware long-arm statute on the view that one member of a conspiracy acts as the agent of others with respect to the aim of the conspiracy:

Thus, a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws.

*Id.*

The complaint here is not plainly inconsistent with application of this conspiracy theory of jurisdiction to Guildford. That is, the assertion of personal jurisdiction cannot be said to be frivolous when viewed through the prism of this theory. Specifically, it appears that operative events critical to the success of the alleged conspiracy (the effectuation of the merger and perhaps the issuance of shares upon exercise of the warrants) did involve actions in this state. It is not frivolous to suppose that Drexel and its officers, agents, and affiliates had a role in those acts, most especially the exercise of the warrants themselves.

The pending motion occasions no evaluation of these theories beyond the unrefined assessment involved in judging whether they are frivolous. Decision on the motion to dismiss itself will require that evaluation.

## IV.

With respect to the scope of discovery, I am persuaded that each of the categories of documents requested to be

---

8. For present purposes I have not focused upon the fact that plaintiffs have not attempted to invoke the sequestration process. With respect to that process, the only material question is whether it could in this instance be employed consistently with the 14th amendment to the United States Constitution.

Were this the only non-frivolous basis to assert jurisdiction, it is arguable that no discovery would be relevant to adjudication of the validity of the claim of personal jurisdiction, since it would not appear to be necessary to consider any facts in addition to those admitted.

produced by all defendants (and by third parties pursuant to a commission process) constitute appropriate discovery at this stage of the proceeding, with one exception. Plaintiffs seek, among other things, documents reflecting or disclosing "any securities or investments held by" Guildford and other identified entities "in Delaware companies or real estate." To the extent this request reaches the stock of publicly traded corporations, it is, in my opinion, not reasonably calculated to lead to the discovery of evidence admissible on the pending Rule 12(b)(2) motion.

Where the action is one to determine the validity or ownership of stock, or the existence of rights to exercise power with respect to stock (*e.g.*, voting), the ownership of stock in a Delaware corporation alone would arguably qualify as a "contact" with this jurisdiction that would count in assessing amenability to suit here. But, in no event, in my opinion, could the mere ownership of stock that is not itself the subject matter of the litigation count as a contact for purposes of personal jurisdiction. Moreover, facts relating to the ownership of stock in a publicly traded corporation may not reasonably be expected to lead to the discovery of evidence relevant to a determination of personal liability. The same could not necessarily be said about the ownership of other (not publicly traded) securities, the existence and nature of which might quite plausibly lead to the discovery of other business relationships that relate to the forum. Thus, to the extent this document request seeks discovery of holdings of publicly traded securities of Delaware corporations, it appears to me to be overly broad.

A form of order implementing the foregoing may be submitted by plaintiffs on notice.