# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE:

TALC PRODUCT
LIABILITY LITIGATION

)
)
)
)
)
)
)

C.A. No. N17C-03-054 TAL

Submitted: July 30, 2018
Decided: September 10, 2018

## OPINION

*Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.'s
Motion to Dismiss Based on Lack of Personal Jurisdiction.*
**GRANTED.**

*Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.'s
Motion for a Protective Order to Quash Jurisdictional Discovery Requests.*
**GRANTED.**

R. Joseph Hrubiec, Esquire and W. Steven Berman, Esquire, NAPOLI SHKOLNIK, LLC, Wilmington, Delaware. Hunter J. Shkolnik, Esquire, NAPOLI SHKOLNIK, PLLC, Melville, New York. Attorneys for Plaintiffs.

Raeann Warner, Esquire, JACOBS & CRUMPLAR, P.A., Wilmington, Delaware. Attorney for Plaintiffs.

Michael P. Kelly, Esquire and Daniel J. Brown, Esquire, McCARTER & ENGLISH, LLP, Wilmington, Delaware. Jessica D. Miller, Esquire, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C. (*argued*). Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (f/k/a Johnson & Johnson Consumer Companies, Inc.).

**BUTLER, J.**

## INTRODUCTION

The Court is here presented with a host of Complaints, all to the same effect. Each alleges that Defendants, in various capacities, were involved in the production, marketing, and sale of talc, specifically in the form of baby powder. It is alleged that this product, advertised as smooth and soothing to babies, causes cancer in adult women. While multiple Defendants are named, only Johnson & Johnson and its subsidiary, Johnson & Johnson Consumer Inc. (f/k/a Johnson & Johnson Consumer Companies, Inc.) (collectively, "JNJ"), have moved to dismiss the claims brought by nonresident Plaintiffs for lack of personal jurisdiction. JNJ also moves for a protective order, seeking to foreclose the nonresident Plaintiffs from taking "jurisdictional discovery." After careful consideration, the Court finds that it is without personal jurisdiction over JNJ as to the claims of the nonresident Plaintiffs. The Court further finds that the nonresident Plaintiffs have not set forth a plausible basis to believe that limited jurisdictional discovery will establish the requisite jurisdiction, and the Court will therefore also grant JNJ's Motion for a Protective Order.

## BACKGROUND

These complaints allege that women who use talcum powder in their perineal area over a period of time contracted ovarian cancer. Talc was manufactured, marketed, and sold by the defendants as baby powder.

Lawsuits making similar allegations have been filed in multiple jurisdictions across the United States.[1] In one such case in Missouri, Johnson & Johnson moved to dismiss a claim brought by a nonresident of Missouri on personal jurisdiction grounds. The motion to dismiss was denied by the trial court. But after a jury awarded the plaintiff $72 million in damages, a Missouri appellate court reversed the trial court's personal jurisdiction ruling, effectively wiping out the verdict.[2]

Over 200 talc lawsuits have been filed in Delaware. The Plaintiffs in these suits hail from all over the country.[3] Two law firms represent all of the Plaintiffs in

---

[1] *See* Tiffany Hsu, *Risk on All Sides as 4,800 Women Sue Over Johnson's Baby Powder and Cancer*, N.Y. Times (Sept. 28, 2017), https://www.nytimes.com/2017/09/28/business/johnson-and-johnson-baby-talcum-powder-lawsuits.html; *Woman Gets $417 Million Verdict From Johnson & Johnson in Baby Powder Cancer Suit*, NBCNews.com (Aug. 22, 2017), https://www.nbcnews.com/health/health-news/woman-gets-417-million-verdict-johnson-johnson-baby-powder-cancer-n794771; *In re Johnson & Johnson Talcum Powder Cases*, No. BC628228, 2017 WL 4780572 (Cal. Super. Ct. Oct. 20, 2017).

[2] *See Estate of Fox v. Johnson & Johnson*, 539 S.W.3d 48 (Mo. Ct. App. 2017), *rev'g and vacating* 2016 WL 799325 (Feb. 26, 2016), *reh'g and/or transfer denied* (Dec. 19, 2017), *transfer denied* (Mar. 6, 2018).

[3] *See, e.g.*, Compl. ¶ 1, *Weldon v. Johnson & Johnson*, C.A. No. N18C-01-137 (Del. Super. filed Jan. 12, 2018) (Trans. I.D. 61563601) (Michigan); Compl. ¶ 1, *Chappell v. Johnson & Johnson*, C.A. No. N17C-12-294 (Del. Super. filed Dec. 21, 2017) (Trans. I.D. 61494847) (New York); Compl. ¶ 1, *Anderson v. Johnson & Johnson*, C.A. No. N17C-10-338 (Del. Super. filed Oct. 26, 2017) (Trans. I.D. 61288868) (Louisiana); Compl. ¶ 1, *Chubb v. Johnson & Johnson*, C.A. No.

3

these Delaware cases. The Complaints are substantively quite similar in their factual allegations and legal theories.

## A. Plaintiffs' Allegations

Plaintiffs allege that JNJ and the other named Defendants produced, marketed, sold, and shipped talc-based products over a number of years. They claim that this production and marketing persisted despite convincing evidence developed by studies that talc was associated with ovarian cancer when used by women on the perineum. Plaintiffs allege that JNJ and the other Defendants, acting individually, collectively and through industry councils and related lobbying efforts, mounted a concerted effort to avoid warning the public of the dangers associated with the use of talc. According to Plaintiffs, JNJ continued its sales and marketing campaign of talc products despite being explicitly advised of its dangers from several creditable sources.

## B. JNJ's Motion to Dismiss

JNJ has not filed an answer to the Complaint, arguing instead that the Court should dismiss the Complaints of nonresident plaintiffs because the Court has neither "general" nor "specific" jurisdiction over JNJ. Plaintiffs also served JNJ

---

N17C-04-102 (Del. Super. filed Apr. 11, 2017) (Trans. I.D. 60455438) (Tennessee); Compl. ¶ 1, *Gordon v. Johnson & Johnson*, C.A. No. N16C-10-237 (Del. Super. filed Oct. 28, 2016) (Trans. I.D. 59762614) (North Carolina); Compl. ¶ 1, *Worth v. Johnson & Johnson*, C.A. No. N16C-10-239 (Del. Super. filed Oct. 28, 2016) (Trans. I.D. 59762787) (Mississippi).

4

with a number of "jurisdictional discovery" requests intended to support the Court's exercise of personal jurisdiction over JNJ. Rather than responding to the discovery, JNJ has filed a Motion for a Protective Order, seeking exemption from responding to the discovery demand because, as JNJ sees it, discovery will not yield facts that would support jurisdiction in Delaware.

## C. Procedural History

At the Court's request, Plaintiffs' counsel first filed their opposition to JNJ's Motion for a Protective Order. While this issue was under consideration, the United States Supreme Court handed down its decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County.*[4] The Court then invited the parties to file supplementary briefs on the impact of that decision.

After reviewing the briefing at that stage, it became clear that the jurisdictional discovery issue was completely intertwined with the question of jurisdiction itself. Plaintiffs then obliged the Court's request to respond to the Motion to Dismiss as well.[5]

---

[4] 137 S. Ct. 1773 (U.S.) 2017.

[5] Of the roughly 200 cases that have been filed in Delaware, a scant few— approximately 12— originally named an additional entity, OMJ Pharmaceuticals, Inc. ("OMJ"). This entity is a Johnson & Johnson subsidiary that is incorporated in Delaware. Shortly after it was named as a Defendant for the first time in 2016, OMJ moved to dismiss the case against it, but not for lack of jurisdiction. Rather, OMJ sought dismissal on grounds that it had simply been improperly named. Plaintiffs did not respond to the motion to dismiss. Much later, after the filing of many additional

# STANDARD OF REVIEW

Allegations in a complaint may be made broadly and need not describe the basis upon which the Court has jurisdiction.[6] But on a motion to dismiss for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2), the plaintiff bears the burden to make out a *prima facie* case establishing jurisdiction over a nonresident defendant.[7] A *prima facie* case requires the "production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."[8] The burden of establishing a defendant's amenability to suit is not merely restricted to the allegations contained in the complaint.[9] Rather, extra-pleading material may be used to supplement the complaint and establish jurisdiction.[10] Therefore, in considering

---

Complaints and Amended Complaints, OMJ was ultimately named as a Defendant in a larger number of the cases that are currently pending before the Court.

As discussed below, because OMJ is incorporated in Delaware, it is subject to the general jurisdiction of the Court. OMJ's arguments for dismissal are fundamentally different from JNJ's jurisdictional arguments, and the Court believes that disposition of one is not dependent upon disposition of the other. The Court will therefore address OMJ's pending motion to dismiss only after it is fully briefed.

[6] *See* Super. Ct. Civ. R. 8(a).

[7] *Republic Bus. Credit, LLC v. Metro Design USA, LLC*, 2016 WL 3640349, at *4 (Del. Super. June 29, 2016) (citing *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000)).

[8] *Baier v. Upper New York Inv. Co*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018) (citing *Prima facie case*, *Black's Law Dictionary* (10th ed. 2014)).

[9] *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *5 (Del. Super. Apr. 24, 2018) (citing *Hart Holding Co. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538–39 (Del. Ch. 1991)).

[10] *Id.* (citing *Hart Holding Co.*, 593 A.2d at 538–39.)

a motion to dismiss under Rule 12(b)(2), the Court is not bound by the pleadings and may consider other matters such as affidavits and briefs of the parties in making determinations regarding personal jurisdiction.[11]

Ordinarily, when jurisdiction is questioned, the Court will permit jurisdictional discovery.[12] But when the record plainly shows that such discovery will yield nothing to substantiate jurisdiction in the forum, discovery will be foreclosed.[13] A plaintiff is not entitled to jurisdictional discovery where the assertion of personal jurisdiction "lacks the minimal level of plausibility needed to permit discovery to go forward."[14]

## ANALYSIS

### I. JNJ's Motion to Dismiss Based on Lack of Personal Jurisdiction

The due process concerns relating to the law of personal jurisdiction have been evolving in recent years. Because of the importance of this evolution in this analysis, a close examination of the recent jurisprudence is warranted.

---

[11] *See Crescent/Mach I Partners, L.P.*, 846 A.2d at 974 (Del. Ch. 2000); *Haisfield v. Cruver*, 1994 WL 497868, at *3 (Del. Ch. Aug. 25, 1994).

[12] *Hart Holding Co.*, 593 A.2d at 539.

[13] *Id.*; *see also Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *7 (Del. Super. Apr. 26, 2010) ("A court may also deny jurisdictional discovery when it is apparent that the requested discovery will add nothing to the jurisdictional analysis.").

[14] *In re Asbestos Litig.*, 2016 WL 7404547, at *2 (Del. Super. Oct. 17, 2016) (quoting *Hart Holding Co.*, 593 A.2d at 539) (internal brackets omitted).

## A. The United States Supreme Court's Recent Rulings on Personal Jurisdiction

In 2011, the United States Supreme Court decided *Goodyear Dunlop Tires Operations, S.A. v. Brown.*[15] *Goodyear* was a suit in a North Carolina court filed by North Carolina residents who were injured in a bus accident in France, alleging a failure of tires manufactured by an Ohio company and sold by its European subsidiaries. The European subsidiaries of Goodyear moved to dismiss for want of personal jurisdiction; Goodyear USA did not join in the motion.

The Court differentiated between general jurisdiction—jurisdiction unrelated to the conduct complained of—and specific jurisdiction—jurisdiction specifically arising out of the conduct complained of. The Court held that general jurisdiction could only be had where a defendant is "essentially at home" in the forum state.[16] While a corporation is certainly "at home" in its place of incorporation or its principal place of business,[17] the Court did not further refine what "continuous and systematic activities" would qualify a corporation as being "essentially at home" in a forum and thus appropriate for the assertion of general jurisdiction. But the Court did specifically repudiate any "stream of commerce" theory of general jurisdiction:

"Flow of a manufacturer's products into the forum . . . may bolster an

---

[15] 564 U.S. 915 (2011).

[16] *Id.* at 919.

[17] *Id.* at 924.

affiliation germane to *specific* jurisdiction. . . But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant."[18]

On the other hand, specific jurisdiction is limited to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."[19] The only substantial relationship of North Carolina to the controversy was that the plaintiffs resided there. According to the Court, this was an insufficient basis to support specific jurisdiction.

Then in 2014, the Court decided two personal jurisdiction cases: *Daimler AG v. Bauman*[20] and *Walden v. Fiore*.[21]

In *Daimler*, Argentinian residents brought tort claims in a California court, alleging that an Argentinian Daimler subsidiary (MB Argentina) conspired with Argentinian security forces to kidnap and kill employees of MB Argentina. The plaintiffs named only the Daimler parent company -- Daimler, AG -- not MB Argentina or its U.S. subsidiary, MBUSA. No plaintiff resided in California and all of the tortious activities occurred in Argentina. Nevertheless, plaintiffs argued that

---

[18] *Id.* at 927.

[19] *Id.* at 919 (citing Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

[20] 571 U.S. 117 (2014).

[21] 571 U.S. 277 (2014).

because MBUSA sold many automobiles in California and had a regional office there, those activities should be imputed to the parent, Daimler AG, which, it was argued, used agents to conduct substantial business in California. The Supreme Court rejected this argument.

*Daimler* gave the Court an opportunity to review and expand on what it had said previously about general jurisdiction in *Goodyear*:

> *Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums. Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified and approve the exercise of general jurisdiction in every State in which a corporation "engages in a substantial, continuous, and systematic course of business." That formulation, we hold, is unacceptably grasping.[22]

Although MBUSA had multiple facilities and sales in California, those activities were not enough to support general jurisdiction over the parent company under an agency theory. Neither Daimler nor MBUSA were incorporated or headquartered in California. According to the Court, the Ninth Circuit erred in concluding "that Daimler, even with MBUSA's contacts attributed to it, was at home in California, and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred in or had its principal impact in

---

[22] *Daimler*, 571 U.S. at 137-38 (citation omitted).

10

California."[23]

Less than two months after *Daimler*, the Court decided *Walden v. Fiore*.[24] In *Walden*, a DEA agent working at a Georgia airport seized a large amount of cash from a couple that was passing through Georgia on their way home to Nevada. The couple eventually got their money back, but nonetheless filed suit against the agent in federal court in Nevada. The Supreme Court held that Nevada could not assert jurisdiction over the Georgia DEA agent.

The Court further clarified the proper focus of specific jurisdiction:

> For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State .... First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State .... Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there .... [And, finally,] [d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State."[25]

The Court made clear that for purposes of determining specific jurisdiction, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[26]

---

[23] *Id.* at 139.

[24] 571 U.S. 277 (2014).

[25] *Walden,* 571 U.S. at 284-86 (internal citations omitted).

[26] *Id.* at 291.

11

This brings us to the Supreme Court's June 2017 ruling in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*.[27] But first, a brief history may be helpful.

More than 600 plaintiffs filed suit in California against Bristol-Myers Squibb ("Bristol-Myers"), alleging injuries caused by ingestion of a Bristol-Myers drug called Plavix. Only a few of the plaintiffs were California residents. Bristol-Myers is a Delaware corporation with headquarters in New York. Bristol-Myers moved to dismiss the complaints of the nonresident plaintiffs, arguing that California courts had no jurisdiction over the tort claims of nonresident plaintiffs.

In the United States Supreme Court, the majority first held that the California Supreme Court correctly concluded that there could be no general jurisdiction because, despite Bristol-Myers's activities in California, it was incorporated in Delaware and headquartered in New York with a major research and development presence in New Jersey. The fact that Bristol-Myers sold a lot of Plavix in California

---

[27] 137 S. Ct. 1773 (2017).

and had a large presence there via a distribution contract with McKesson was insufficient to move the Court to consider Bristol-Myers "at home" there.

As to specific jurisdiction, the Court, citing to *Goodyear*, stated that the Court's settled jurisdictional principles controlled the case:

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").[28]

The Court rejected the California Supreme Court's reasoning that specific jurisdiction could be relaxed or mollified by a defendant's activities in the forum that were unrelated to the conduct giving rise to the complaint.[29] It likewise rejected the notion that the similarity between the California residents' complaints and the nonresident complaints should factor into the determination of specific jurisdiction.

## B. General Jurisdiction: JNJ is not "at home" in Delaware

The "paradigmatic" forum for general jurisdiction is the place of incorporation or the principal place of business. Delaware is neither to JNJ. It is

---

[28] 137 S. Ct. at 1781 (internal citations omitted).

[29] *Id.* ("Nor is it sufficient—or even relevant—that [Bristol-Myers] conducted research in California on matters unrelated to Plavix. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

13

certainly true that the Supreme Court left open the possibility that there could be other *fora* that were "exceptional"[30] and therefore "almost like home." But if the term "exceptional" was left only ill-defined, the Court has made clear that merely engaging in a "substantial, continuous and systematic course of business" unrelated to the lawsuit is not exceptional.[31]

In this case, Plaintiffs appended the annual statements of Johnson & Johnson—a company with some 127,000 employees and worldwide reach—but have pointed to nothing therein that would suggest that the company has such "exceptional" ties to Delaware as to warrant a finding that it is "at home" here.

Plaintiffs argue that because JNJ "intentionally distributed talcum products in Delaware as part of a national distribution plan," Plaintiffs may establish jurisdiction under a "stream of commerce" theory.[32] But we have seen that the Supreme Court has repudiated any "stream of commerce" theory to support general jurisdiction.

Nor can the Court agree that Johnson & Johnson's creation of other subsidiaries in Delaware, unrelated to this lawsuit, somehow infects Johnson & Johnson and its non-Delaware subsidiaries with general jurisdiction in Delaware. General jurisdiction is heavily related to how the defendant has chosen to organize

---

[30] *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

[31] *Id.* at 137-38.

[32] Pls.' Opp. to Def.'s Mot. for Protective Order, Trans. I.D. 60414353, at 8.

itself and where it has chosen for its principal place of business. Other Defendants named in the caption chose to organize in Delaware, JNJ did not. Plaintiffs' arguments favoring general jurisdiction in Delaware are unpersuasive.

## C. Specific Jurisdiction

We know that an analysis of specific jurisdiction requires inquiry into whether the lawsuit "aris[es] out of or relate[s] to the [corporation's] contacts with the forum."[33] To this end, we are further instructed that a defendant's unrelated forum activity is just that—unrelated to the jurisdictional determination. From the decisions above, we are directed to consider a defendant's forum-related activity and the relationship of that activity to the underlying controversy.

It is worth recalling that the dispute before the Court is not a class action. Rather, each lawsuit represents the claims of individual Plaintiffs from various states. So what may be true of a Delaware Plaintiff may not be true of an Ohio Plaintiff. JNJ does not dispute specific jurisdiction in this Court for the claims brought by Delaware residents, whose injuries allegedly resulted from JNJ's forum-

---

[33] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 130 (Del. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

related activities. It is only the nonresident Plaintiffs' Complaints that are vulnerable to JNJ's Motion to Dismiss.

Plaintiffs must distinguish the *Bristol-Myers Squibb* case, and to this task they have put forth great effort. Unfortunately, some of that effort predated the U.S. Supreme Court's Opinion and predicted—incorrectly—that the California Supreme Court's ruling finding jurisdiction in California would ultimately prevail. In any event, there are a few arguments that have potentially survived. The Court will address these arguments in the sections that follow.

### 1. JNJ's Sales and Marketing of Talc in Delaware

Plaintiffs allege "upon information and belief" that JNJ "marketed and distributed talc to hospitals to patients with newborn babies including Delaware hospitals and clinics and may have also utilized Delaware newspapers and periodicals for marketing and sales purposes."[34] For purposes of this ruling, the Court must, and does, assume the truth of these allegations.

The Court accepts that forum-specific activities such as sales and marketing in Delaware, to Delawareans, may form a basis for a Delawarean to make a claim against JNJ. But as to a nonresident Plaintiff, even if a defendant's activity is forum-specific, it is not germane to the nonresident Plaintiff's claim. The nonresident

---

[34] Pls.' Suppl. Mem. Opposing Mot. for Protective Order in light of *Bristol-Myers Squibb*, Trans. I.D. 61068513, at 9.

16

presumably was subject to sales and marketing forces in her own jurisdiction, not in Delaware. Thus, JNJ's sales and marketing of products in Delaware to resident Plaintiffs is not forum-related conduct by JNJ that is related to the specific claims at issue—the claims being asserted by nonresident Plaintiffs.

It is thus incorrect to say that JNJ's sales and marketing in Delaware, or representations made in connection therewith, are forum-related activities that give rise to the liability sued on, at least as far as the nonresident Plaintiffs are concerned. If nonresident Plaintiffs are to establish specific jurisdiction over JNJ as to their claims, they gain little by referencing JNJ's sales and marketing of products in Delaware to Delaware residents.

### 2. *The Confidentiality Agreement*

Plaintiffs point to an unspecified confidentiality agreement between Defendant Luzenac (now Imerys Talc America, Inc.) and JNJ. According to Plaintiffs, the agreement included a provision stating that it would be governed by Delaware law.[35] However, this is not a lawsuit concerning a breach of the confidentiality agreement. The fact that an unrelated contract is governed by Delaware law is, in every sense, conduct unrelated to the specific claims asserted in the Complaints.

---

[35] *Id.*

17

### 3. The Testing of Talc Samples by DuPont

The only forum-related conduct concerning the sale and distribution of talc to nonresident Plaintiffs is an allegation that in 1974, JNJ "began sending talc samples for analysis to DuPont in Wilmington, Delaware, which is no doubt a consequence of the initial reports associating talc with ovarian cancer."[36]

To persuade the Court that the talc testing done by DuPont is somehow relevant to the jurisdictional analysis, Plaintiffs direct the Court to an Illinois case against a drug manufacturer in which plaintiffs alleged birth defects caused by ingestion of the psychiatric drug Paxil during pregnancy. An Illinois appellate court found the drug manufacturer's clinical trials in Illinois to be sufficient forum-related conduct to vest Illinois with jurisdiction over the manufacturer as to the claims of nonresident plaintiffs concerning the safety of the drug involved in the clinical trials.[37] Because, in that court's view, the nonresident plaintiffs' claims arose from acts or omissions during the clinical trials and the resulting inadequate warning labels, the nonresident plaintiffs had made a *prima facie* showing of jurisdiction— i.e., plaintiffs had alleged a sufficient connection between the drug manufacturer, the forum, and the specific claims at issue.

---

[36] Pls.' Suppl. Mem. Addressing Personal Jurisdiction for Defs., Trans. I.D. 61813834, at 13.

[37] *M.M. ex rel. Meyers v. GlaxoSmithKline LLC*, 61 N.E.3d 1026 (Ill. App. Ct.), *appeal denied sub nom. M.M. v. GlaxoSmithKline LLC*, 65 N.E.3d 842 (Ill. 2016), *and cert. denied*, 138 S. Ct. 64 (2017).

Such a result may be justified given the drug manufacturer's deployment of Illinois citizens in its clinical trials and the Illinois Court's view of the centrality of those clinical trials to the nonresident plaintiffs' complaints. Of similar effect are two trial court decisions in California involving another allegedly harmful drug that was subject to clinical trials in California.[38]

All of this is of largely academic interest here, because talc is not a pharmaceutical drug subject to clinical trials. Rather, it appears that some quantity of talc was shipped to a lab in Delaware, and DuPont analyzed it—perhaps for its purity or foreign substance content—and DuPont presumably informed JNJ of its findings. Even if the Court were inclined to agree with the California and Illinois courts that conducting clinical trials in a jurisdiction established a sufficient nexus between the forum and the specific claims at issue to vest the Court with specific jurisdiction, it does not follow that analyzing talc privately in a lab in Delaware would confer specific jurisdiction over JNJ as to the nonresident Plaintiffs' claims in a Delaware courtroom. Assuming this was indeed some forum-related conduct directed by JNJ, it falls far short of the connection required between the forum and the specific claims at issue—i.e., those claims being asserted by each nonresident

---

[38] *Dubose v. Bristol-Myers Squibb Co.*, 2017 WL 2775034 (N.D. Cal. June 27, 2017); *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017). If it appears that there may be a "clinical trial" basis for specific jurisdiction developing in certain jurisdictions, that may very well be the case, or it may simply be that no appellate court has tackled the question just yet.

Plaintiff.

The relevant JNJ conduct that forms the basis of nonresident Plaintiffs' claims against JNJ is the continued production, packaging, marketing, and sale of talc despite knowing that it was harmful to women, and the concerted efforts that JNJ allegedly engaged in to prevent the public from finding out about the dangers associated with the use of talc in JNJ's products. If JNJ had talc analyzed by DuPont and learned or confirmed by the analysis that the talc was indeed dangerous, that evidence would surely be damaging to JNJ. But that knowledge did not advance the sale or marketing of talc to the public. It was not even a link in the production chain of talc's eventual sale to the public. Plaintiffs have not alleged any fact linking DuPont's testing of talc samples in Delaware to the nonresident Plaintiffs' claims. The bare fact that JNJ contracted with DuPont to have some kind of testing performed on talc samples in a lab in Delaware is not enough to vest Delaware courts with jurisdiction over JNJ as to the nonresident Plaintiffs' claims.[39]

Sending talc samples to DuPont for analysis is, in the Court's view, at best tangentially related to the claims in this lawsuit in that they both involve talc. Moreover, the fact that the situs of the analysis was a lab in Delaware is at best

---

[39] *See Bristol-Myers Squibb,* 137 S. Ct. at 1783 ("The bare fact that [Bristol-Meyers] contracted with a California distributor [to distribute Plavix] is not enough to establish personal jurisdiction in the State.").

happenstance; it could have been a lab anywhere, and it was not the sort of purposeful availment of the privilege of conducting business in a state that would lead JNJ to "reasonably anticipate being hauled into court there."[40]   Thus, assuming Plaintiffs' allegations of forum-related lab analysis of talc are true, the Court does not find that conduct to be sufficiently significant or related to the specific claims at issue in the lawsuits before the Court to justify the exercise of specific jurisdiction over JNJ.

### 4. *The Parent-Subsidiary, Principal-Agent, and Coconspirator Arguments*

Plaintiffs make additional claims related to the relationship between JNJ and other forum Defendants, including parent-subsidiary, principal-agent, and coconspirators.   All three use a similar, "attributive" approach to establishing jurisdiction.

### a. *JNJ's Delaware Subsidiaries*

Plaintiffs argue that nearly 50% of Johnson & Johnson's 75 American subsidiaries are incorporated in Delaware and such ties to the forum militate in favor of a finding of specific jurisdiction here.   In addition, Plaintiffs urge that JNJ transacts business in Delaware and may employ sales representatives or distributors here.  Both of these arguments are essentially foreclosed by *Bristol-Myers Squibb,*

---

[40] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

21

where the defendant had substantial business ties to California, none of them related to the claims brought by the nonresident plaintiffs. Indeed, *Bristol-Myers Squibb* teaches that these unrelated relationships to the forum do *not* form a basis for the exercise of specific jurisdiction.

### b. Agency Theory

Plaintiffs argue that JNJ "contracted with distributors in Delaware to disseminate its talcum products, thus establishing jurisdiction because Defendants contracted to supply goods in Delaware."[41] We need not labor long over this argument. JNJ does not contest jurisdiction in Delaware as to resident claims. The residents' claims are intimately involved with JNJ's conduct in the forum, thus satisfying specific jurisdiction. So whether JNJ acted as principal or through agents is largely irrelevant to jurisdiction as to resident Plaintiffs. As to the nonresident Plaintiffs, however, it is equally irrelevant how JNJ distributed goods to Delaware Plaintiffs with the opposite result: regardless whether JNJ marketed to Delaware as a principal or through an agent, its forum-related conduct did not cause injury to nonresident Plaintiffs.

### c. Conspiracy Theory

Plaintiffs allege that "both the Delaware suppliers and the foreign sellers of

---

[41] Pls.' Opp. to Def.'s Mot. for Protective Order, Trans. I.D. 60414353, at 11.

talc engaged in a civil conspiracy."[42]   Just how far the conspiracy theory of jurisdiction goes after the Supreme Court's rulings in *Daimler*, *Walden*, and *Bristol-Myers Squibb* is not an answer that jumps off the page when looking at the state of the case law in this area.  Indeed, whether the doctrine of conspiracy jurisdiction has even survived the Supreme Court's recent rulings on jurisdiction has been questioned.[43]

In a pre-*Daimler* case, the conspiracy theory of jurisdiction was recognized by the Delaware Supreme Court in *Istituto Bancario Italiano SpA v. Hunter Engineering Company*.[44]  There, the Court recognized that this type of jurisdiction could be found where there was alleged (1) a conspiracy, (2) of which the defendant was a member, (3) a substantial act or effect in furtherance of the conspiracy that occurred in the forum, (4) that the defendant knew or had reason to know of the act in the forum or that acts outside the forum would have an effect in the forum, and (5) that the act in, or effect on, the forum was a direct and foreseeable result of the

---

[42] *Id.* at 13.

[43] *See Cockrum v. Donald J. Trump for President, Inc.*, — F.Supp.3d. —, —, 2018 WL 3250445, at *19–20 (D.D.C. July 3, 2018); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017); *Reading the Tea Leaves of Early Post-Bristol-Myers Personal Jurisdiction Decisions*, [18 CLASS 1131] Class Action Litig. Rep. (BNA) 2-3 (Dec. 8, 2017).

[44] 449 A.2d 210 (Del. 1982).  While much of the litigation over conspiracy or agency jurisdiction has centered itself in the Delaware Court of Chancery, the doctrine has been recognized in the Superior Court as well.

conduct in furtherance of the conspiracy.[45]

In order to harmonize the conspiracy theory of jurisdiction with the United States Supreme Court's restructuring of personal jurisdiction, we must presume that the requirement that the conspiracy accomplish a "substantial act or effect" in the forum correlates with the Supreme Court's mandate that the defendant engage in forum-related conduct that is directly related to the specific claims at issue in the lawsuit.[46]

Here, Plaintiffs make no effort at all to articulate a substantial act committed in furtherance of the alleged conspiracy that was carried out in Delaware. Nor does even a generous reading of the Complaints and supplemental briefing remotely suggest one.

The conspiracy theory of jurisdiction is narrowly construed,[47] and Plaintiffs must allege specific facts tending to show that JNJ was a conspirator in acts in

---

[45] *Id.* at 225.

[46] To the extent Plaintiffs would argue that the conspiracy only need have had an effect on Delaware Plaintiffs—such as by sales of talc in the forum—the Court rejects the notion that the effect on resident Plaintiffs satisfies the "act or effect" needed to vest the Court with specific jurisdiction over nonresident Plaintiffs' claims. Such a rule would essentially render the forum-related activity requirement meaningless and vitiate the strictures of specific jurisdiction. While effects may satisfy a resident Plaintiff's burden, an effect on a forum Plaintiff has nothing whatsoever to do with the effects on nonresident Plaintiffs.

[47] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 330 (Del. Ch. 2003) (citing *Computer People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *5 (Del. Ch. Apr. 27, 1999)); *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 976 (Del. Ch. 2000).

Delaware and such pleadings must be more than "a facile way for [P]laintiffs to circumvent the minimum contacts requirement."[48]

While Plaintiffs' Complaints are long on the history of talc and its regulation, or lack thereof, the studies showing its dangers to women, and the Defendants' efforts to repudiate or suppress the evidence, they are short on references to Delaware. Not only is JNJ not mentioned in connection with conspiratorial acts in Delaware, no other Defendant is either. Incorporation in Delaware serves only to establish Delaware as "home" for purposes of general jurisdiction; it is essentially irrelevant for purposes of specific jurisdiction and does nothing to advance the nonresident Plaintiffs' claims in that respect.

## II. JNJ's Motion for a Protective Order to Quash Jurisdictional Discovery Requests

Upon a defendant's motion to dismiss under Rule 12(b)(2), a plaintiff is on notice that personal jurisdiction is contested and the plaintiff thereupon has a duty to present facts or arguments demonstrating a basis to hold the defendant to account in the forum.

Here, Plaintiffs have filed numerous pleadings with the Court, both in response to JNJ's Motion for a Protective Order to preclude jurisdictional discovery and to JNJ's Motion to Dismiss the nonresident Plaintiff Complaints under Rule

---

[48] *Computer People*, 1999 WL 288119, at *6.

25

12(b)(2) for want of personal jurisdiction. Despite multiple briefs from able counsel for the Plaintiffs, the allegations supporting personal jurisdiction remain anemic at best. While the Court appreciates Plaintiffs' many and creative arguments, the Court must also recognize that other than a passing reference to some talc samples being analyzed by DuPont in Delaware, there is essentially no connection between JNJ, the forum, and the nonresident Plaintiffs' claims as alleged in the pleadings and supplemental briefing.

Plaintiffs' counsel are well schooled in mass tort litigation and the pleadings needed to establish jurisdiction. In their briefing, counsel have specifically referenced information obtained under a protective order in the MDL, which indicates that Plaintiffs have access to that discovery. The Court believes that Plaintiffs' pleadings and supplemental briefing have presented the best case they could for establishing jurisdiction in Delaware. The Court has, as it must, given Plaintiffs every benefit of any doubt, construing all of the pleadings and supplemental materials in a light most favorable to sustaining Plaintiffs' jurisdictional claims and permitting discovery to go forward.

The question becomes: are Plaintiffs' claims to personal jurisdiction in Delaware lacking because the facts are simply not there, or are they lacking because

the Plaintiffs have not been afforded discovery in light of JNJ's Motion for a Protective Order?

First, we know Plaintiffs will be unable to prove any facts that will support general jurisdiction in Delaware. As noted by Justice Breyer in *Daimler*, general jurisdiction is a straightforward inquiry in the post-*Daimler* world.[49] Delaware is not the place of incorporation or principal place of business for JNJ. There is not a fact that Plaintiffs could somehow pull out of discovery that would have a realistic chance of changing these realities. General jurisdiction over JNJ is simply not available to Plaintiffs.

As to specific jurisdiction, certainly JNJ has engaged in much activity in the forum *un*related to these talc lawsuits. And certainly JNJ's acknowledged forum related activity (sales and marketing of talc to Delawareans) is activity related to or arising out of the resident Plaintiffs' claims of toxic results. The nonresident Plaintiffs' real difficulty is finding facts to support the argument that JNJ engaged in some "substantial" activity in the forum that would establish the requisite causal link in the chain from such forum-related activity to not only the subject matter of the lawsuits but to the specific claims by the nonresident plaintiffs here. When we consider the Supreme Court's admonition that a defendant's forum activity be

---

[49] *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home.").

27

"based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State,"[50] we must conclude that such facts are not alleged in any of the papers submitted to the Court.

The Court acknowledges the apparent brewing tension in the case law with respect to forum-related activity that will satisfy the "arising from or relating to" requirement for specific jurisdiction. On the one hand, the Courts in California and Illinois found sufficient forum-related contact when a drug maker used the forum to conduct clinical trials for a drug later used by nonresident plaintiffs that allegedly caused them injury outside the forum.[51] On the other hand, at least one District Court in Missouri found the forum-related activity insufficient in a talc case despite allegations that Johnson & Johnson controlled a manufacturer in Missouri who, at JNJ's direction, discarded warning labels on talc packaging shipped to the plant.[52]

It is understood that at the initial pleading stage, there is much about the dispute that a plaintiff may surmise but does not yet know. As a result, a Plaintiff's

---

[50] *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[51] *Dubose v. Bristol-Myers Squibb Co.*, 2017 WL 2775034 (N.D. Cal. June 27, 2017); *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017); *M.M. ex rel. Meyers v. GlaxoSmithKline LLC*, 61 N.E.3d 1026 (Ill. App. Ct.), *appeal denied sub nom. M.M. v. GlaxoSmithKline LLC*, 65 N.E.3d 842 (Ill. 2016), *and cert. denied*, 138 S. Ct. 64 (2017).

[52] *Jinright v. Johnson & Johnson, Inc.*, 2017 WL 3731317, at *4 (E.D. Mo. Aug. 30, 2017).

allegations of jurisdiction need only be minimally plausible.[53]  And our discovery rules are intended to help the parties flesh out their suspicions.  But we must also eschew discovery "fishing expeditions" that unfairly put defendants to time and expense while offering virtually no possibility of a resolution finding jurisdiction.[54]

Even taking the position advocated by Plaintiffs—that clinical trials would satisfy the "arising from or related to" requirement—the Court is not satisfied that Plaintiffs have made any allegation regarding JNJ's conduct in the forum "arising from or related to" the specific claims at issue that would merit jurisdictional discovery.  Indeed, Plaintiffs' extensive briefing is essentially limited to the legal arguments of whether stream of commerce or perhaps an agency or conspiracy theory of jurisdiction should apply—not the essential facts.  Without those facts, Plaintiffs have not made the requisite showing, minimal as it may be, to warrant jurisdictional discovery.  Plaintiffs burden is low but is it not nothing.  Plaintiffs must, at the very least, chart out a course that sets forth a plausible theory by which this Court could obtain jurisdiction over JNJ.  Plaintiffs are unable to articulate any discoverable facts that, if true, would support a finding of jurisdiction in the forum.

And if not clear enough already, this is not a routine tort case.  As discussed

---

[53] *See In re Asbestos Litig.*, 2016 WL 7404547, at *2 (Del. Super. Oct. 17, 2016).

[54] *See In re Asbestos Litig.*, 2012 WL 1409397, at *2 (Del. Super. Jan. 10, 2012) (denying additional jurisdictional discovery to further a claim of general jurisdiction).

above, talc litigation is ongoing in any number of jurisdictions, not the least of which is the MDL in New Jersey. Extensive discovery has already been requested and disgorged in support of those cases. At oral argument, Plaintiffs' counsel was quick to point out that much of that discovery is subject to a protective order. But counsel did not urge that such protective orders kept them from revealing what evidence establishes that Delaware has some kind of significant relationship to the nonresident Plaintiffs' claims. Indeed, as discussed above, Plaintiffs did put forward some evidence from the MDL, a fact which strongly suggests that more was not put forward because more does not exist. It would seem obvious that at a minimum, if such evidence did exist, Plaintiffs would have sought relief from any confidentiality agreement or protective order.

The Court cannot agree that jurisdictional discovery is an automatic right of Plaintiffs. Plaintiffs have not made the requisite showing, minimal as it may be, to warrant jurisdictional discovery. Because Plaintiffs have failed to articulate any discoverable facts that, if true, would support a finding of jurisdiction in the forum, the Court can come to only one conclusion—the discovery sought by Plaintiffs will add nothing to the jurisdictional analysis.[55] Under such circumstances, the Court will grant JNJ's Motion for a Protective Order.

---

[55] *See Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *7 (Del. Super. Apr. 26, 2010).

30

## CONCLUSION

JNJ's Motion to Dismiss the nonresident Plaintiffs' claims for lack of personal jurisdiction is **GRANTED**. The nonresident Plaintiffs' claims against JNJ are therefore **DISMISSED**.

JNJ's Motion for a Protective Order to Quash Jurisdictional Discovery Requests is **GRANTED.**

**IT IS SO ORDERED.**

Judge Charles E. Butler

31