# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| OTTO CANDIES, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-02-260 PRW CCLD |
| | ) | |
| KPMG LLP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 15, 2017
Decided: July 26, 2017

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiffs' Exceptions to the*
*Special Master's Final Report and Recommendation,*
*Plaintiffs' Exceptions are **DENIED**;*
*the Special Master's Final Report and Recommendation is **ADOPTED**, in whole.*

David E. Ross, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware, Terry L. Wit, Esquire (*pro hac vice*), Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, California, A. William Urquhart, Esquire (*pro hac vice*), Derek L. Shaffer, Esquire (*pro hac vice*), Quinn Emanuel Urquhart & Sullivan, LLP, Washington, District of Columbia, Attorneys for Plaintiffs.

Timothy Jay Houseal, Esquire, William E. Gamgort, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, John K. Villa, Esquire (*pro hac vice*), Ana C. Reyes, Esquire (*pro hac vice*), Williams & Connolly LLP, Washington, District of Columbia, Attorneys for KPMG International Cooperative.

Kevin R. Shannon, Esquire, Matthew F. Davis, Esquire, Christopher N. Kelly, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Jack B. Jacobs, Esquire, Sidley Austin LLP, Wilmington, Delaware, Michael C. Kelley, Esquire (*pro hac vice*), Jose F. Sanchez, Esquire (*pro hac vice*), Sidley Austin LLP, Los Angeles, California, Gregory G. Ballard, Esquire (*pro hac vice*), Sidley Austin LLP, Attorneys for KPMG Cárdenas Dosal, S.C.

Todd C. Schlitz, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware, Robert A. Scher, Esquire (*pro hac vice*), Jonathan H. Friedman, Esquire (*pro hac vice*), Foley & Lardner LLP, New York, New York, Attorneys for KPMG LLP.

**WALLACE, J.**

## I.     INTRODUCTION

This jurisdictional discovery dispute stems from an allegedly poor audit of three entities:  Banamex, Citigroup, and Oceanografia.  Oceanografia was a large offshore oil services company in Latin America.[1]  Citigroup is a large, Delaware-incorporated bank.[2]  Banamex is Citigroup's Mexican subsidiary.[3]

Citigroup allegedly provided hundreds of millions of dollars to Oceanografia based on forged invoices.[4]  Plaintiffs, a group comprised of some of Oceanografia's largest creditors,[5] allege the Defendants failed to detect this scheme.[6] Oceanografia's fraud was exposed in February 2014 when Mexico's state-owned oil and gas company reported to Citigroup that several Oceangrafia invoices contained forged signatures.[7]  Citigroup canceled certain cash advances, precipitating

---

[1]     Plaintiffs' Complaint ("Pls.' Compl.") at ¶ 1.

[2]     *Id.*

[3]     *Id.*

[4]     *Id.* ¶ 2.

[5]     Pls. Compl. at ¶ 45.  Plaintiffs generally fall into three categories:  (1) shipping companies that sold or leased vessels to Oceanografia; (2) holders of bonds issued by Oceanografia; and (3) a bank that loaned funds to Oceanografia.  *Id.* at ¶ 46.

[6]     Pls.' Compl. at ¶ 1.

[7]     *Id.* ¶ 6.

Oceanografia's collapse.[8]  Plaintiffs allege that Defendants should have caught on to the fraud prior to the collapse.

An appointed Special Discovery Master issued a Report and Recommendation denying Plaintiffs' jurisdictional discovery requests.  For the reasons set forth below, the Court **AGREES WITH** the Special Master, and **ADOPTS** the Special Master's Final Report and Recommendation resolving this discovery dispute.  In turn, the Court **DENIES** Plaintiffs' Exceptions to the Special Master's Final Report and Recommendation.

## II.   PROCEDURAL BACKGROUND[9]

### A. THE JURISDICTIONAL DISCOVERY DISPUTE

On February 26, 2016, Plaintiffs filed a negligent misrepresentation action against three KPMG entities:  KPMG International; KPMG LLP ("KPMG US"); and KPMG Cardenas Dosal, S.C. ("KPMG Mexico").[10]  In an attempt to establish personal jurisdiction over all three defendants, Plaintiffs allege the parties have created a "joint venture."  According to Plaintiffs, KPMG International, a Swiss cooperative, is the overall head of that venture.  KPMG Mexico and KPMG US, a

---

[8]     *Id.* ¶ 7.

[9]     Given the limited purpose of this order, the background and the specifics of the discovery requests are developed in a manner more cursory than usual for the Court. In short, the Court writes here to the parties, each of which has a strong working knowledge of the particulars of the specific disputed issues addressed.

[10]     Unless specificity is required, the Court will refer to all three KPMG entities as Defendants.

Delaware limited liability partnership, are subsidiaries. Plaintiffs allege KPMG US exercises controlling influence over KPMG International; so much so, they say, that KPMG International is KPMG US's alter ego. So, Plaintiff's posit, KPMG US's Delaware-incorporation status, combined with its excessive influence over KPMG International, results in Delaware's personal jurisdiction over all Defendants.

Defendants have moved to dismiss. Specifically, KPMG International and KPMG Mexico moved to dismiss for lack of personal jurisdiction. While KPMG US moved to dismiss for failure to state a claim and lack of subject matter jurisdiction, without contesting personal jurisdiction.

On July 13, 2016, Plaintiffs served jurisdictional discovery on all Defendants to help them establish personal jurisdiction over KPMG Mexico and KPMG International.[11] On August 23, 2016, Defendants moved for protective orders.[12] Defendants argued jurisdictional discovery was unnecessary because the motion to dismiss could be heard on the then-extant pleadings and record and could fully

---

[11]    Notice and Certificate of Service of (i) Plaintiffs' Jurisdictional Discovery Requests to Defendants KPMG [US], KPMG [Mexico], and KPMG [International] and (ii) this Notice and Certificate of Service (Trans. ID 59276380).

[12]    KPMG International Cooperative's Motion for Protective Order Relating to Plaintiffs' Jurisdictional Requests (Trans. ID 59449821) [hereinafter "KPMG International Mot."]; Defendant KPMG LLP's Motion for Protective Order (Trans. ID 59449894); and KMPG Cardenas Dosal, S.C.'s Motion for Protective Order (Trans. ID 59449910).

adjudicate Plaintiffs' claims.[13] Plaintiffs argued that jurisdictional discovery was appropriate to establish personal jurisdiction as long as their requests were not clearly frivolous.[14]

On November 9, 2016, the Court issued an order granting in part, and denying in part, Defendants' motion for a protective order. Specifically, the Court ordered that:

> Defendants need to respond to "Category 2 Discovery" and "Category 3 Discovery" requests only to the extent that such requests: support a potential claim for specific jurisdiction over KPMG International and [KPMG] Mexico as to their role, if any, in the Banamex audit or the component audit of Banamex as part of the Citigroup audit; seek information concerning the relationship and interaction between the defendants; *and* are specifically limited to conduct in Delaware that precisely gives rise to the claims alleged in the Complaint[.][15]

---

[13] *See, e.g.,* KPMG International Mot. at 6 ("[C]ourts have granted motions to dismiss for lack of personal jurisdiction despite allegations of far more relevant contacts than Plaintiffs make here.").

[14] Pls.' Opp'n. to Defs.' Mots. For Protective Order at 8–10.

[15] Order Granting KPMG International Cooperative, KPMG [Mexico], and KPMG LLP's Motions for Protective Order Relating to Plaintiffs' Jurisdictional Discovery Requests (Trans. ID 59815638) (emphasis in original). Category 2 Discovery "seek[s] information about the relationship between Defendants both generally and in connection with the audits at issue in this case, such as any communications and meetings or documents exchanged between and among Defendants relating to the Citigroup, Banamex, and OSA engagements, which are relevant to the jurisdictional analysis in showing where work was performed and by whom." Pls.' Opp'n. to Defs.' Mots. For Protective Order at 23–24, n. 35. Category 3 Discovery "seek[s] information about KPMG's audit procedures relevant to the component audits, as well as the relationship between KPMG US and KPMG CD in connection with the audit of Citigroup's consolidated financial statements and component audit of Banamex." *Id.* at 24–25, n. 38.

Following entry of the Protective Order, Defendants responded to Plaintiffs' jurisdictional discovery requests by largely objecting to them.[16] The parties had several unsuccessful meet-and-confers.[17] On February 13, 2017, the Court appointed a Special Master to resolve the parties' disputes.[18]

## B. APPOINTMENT OF THE SPECIAL MASTER

The parties submitted briefs to the Special Master concerning three issues: (1) the joint venture relationship between and among Defendants in connection with the Citigroup/Banamex audits; (2) the consolidated Citigroup audit as it relates to (a) establishing a joint venture relationship between and among Defendants, and (b) identifying connections between the three KPMG entities; and (3) insurance and indemnity arrangements among the Defendants.[19] The Special Master heard oral argument on March 28, 2017. On April 7, 2017, the Special Master issued a Draft Report, and invited exceptions from the parties. Defendants filed exceptions. On April 24, 2017, the Special Master issued his final report and recommendation.

---

[16] William B. Chandler III, Esquire's Special Master's Final Report and Recommendation at 5 [hereinafter "Special Master's Report."].

[17] *Id.*

[18] Stipulation and [Proposed] Order of Reference to Special Discovery Master, signed Feb. 13, 2017. *See* Trans. ID 60202062.

[19] Special Master's Report at 6–7.

## C. THE SPECIAL MASTER'S REPORT

The Special Master first determined whether Plaintiffs' "joint venture" theory was so clearly frivolous that it did not warrant further investigation. He determined that Plaintiffs could, in fact, use their "joint venture" theory to attempt to establish personal jurisdiction over all Defendants.[20] But the Special Master rightly observed that Plaintiffs' alleged "joint venture" was insufficient alone to establish personal jurisdiction. Plaintiffs still must satisfy Delaware's long-arm statute and establish minimum contacts.[21]

Ten *Del. C.* § 3104(c), Delaware's long-arm statute, provides that a nonresident establishes legal presence within this State when the nonresident:

    (1) Transacts any business or performs any character of work or service in the State;

    (2) Contracts to supply services or things in this State;

    (3) Causes tortious injury in the State by an act or omission in this State;

    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

---

[20]     *Id.* at 12.

[21]     *Id.* at 19. *See also* DEL. CODE ANN. tit. 10, § 3104(c) (2016).

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[22]

To determine the extent to which Plaintiffs could conduct their jurisdictional discovery, the Special Master looked at the Protective Order's text. Specifically, the Special Master focused on the language requiring Defendants to provide responses "as to their role, if any, in the Banamex audit or the component audit of Banamex as part of the Citigroup audit."[23] The Special Master read this narrowly, determining that Citigroup itself was not part of the Order; Plaintiffs could seek jurisdictional discovery regarding the Banamex audit only.

The Special Master noted that Delaware courts look to the "nature of the acts giving rise to the claim, rather than the nature of the claims, [to] determine[] whether a cause of action arises from contacts with the forum."[24] And Plaintiffs' claims largely, if not solely, focused on Defendants' conduct in auditing Banamex.[25] In

---

[22]     DEL. CODE ANN. tit. 10, § 3104(c)(1)–(6) (2016).

[23]     *See supra.,* note 15.

[24]     Special Master's Report at 23 (quoting *Sprint Nextel Corp. v. iPCS,* 2008 WL 2737409, at *9 (Del. Ch. July 14, 2008)).

[25]     Special Master's Report at 23 (citing Pls.' Compl. ¶¶ 211, 234–35, 260–61).

-7-

turn, the Special Master determined that any attempts for jurisdictional discovery on Citigroup and any other audits would be too tenuous to comport with Delaware's long-arm statute. And so, the Special Master properly understood "the Order [to] limit[ ] jurisdictional discovery to discovery relating to the Banamex audit and the Banamex component audit."[26]

In his initial draft report and recommendation, the Special Master allowed Plaintiffs limited discovery into Defendants' Citigroup audit for two reasons. First, the Special Master held, "[t]o the extent that work was done on the Citigroup audit in Delaware that affected the way in which the Banamex work was performed, funded, or insured, Plaintiffs are entitled to discovery on that work."[27] Second, the Special Master held Plaintiffs could have discovery regarding Defendants' relationship with the Citigroup audit to the extent it pertained in some way to the Banamex audit.[28] The Special Master allowed this because "it may be that there are documents or other discovery that do not necessarily discuss specifically the Banamex component, but nevertheless are 'reasonably calculated to lead to

---

[26]     Special Master's Report at 24.

[27]     *See* Plaintiffs' Br. in Supp. of Their Exceptions to the Special Master's Final Report and Recommendation, Ex. 30, App. A. (Special Master's Draft Report and Recommendation) at 18.

[28]     *Id.*

discovery of admissible evidence' regarding the parties' roles vis-à-vis the Banamex audit."[29]

After review of all parties' filings, the Special Master ultimately found that no work on the Banamex audit or the Banamex component audit occurred in Delaware; the work occurred either in New York or Mexico.[30] No conduct occurred in, or could be imputed to, Delaware. As such, the Special Master found it "moot to grant additional jurisdictional discovery to support a joint venture/agency theory of jurisdiction."[31]

### D.   PLAINTIFFS' EXCEPTIONS

Pursuant to Superior Court Civil Rule 122,[32] Plaintiffs have noticed exceptions to the Special Master's Final Report and Recommendation. Defendants oppose.

## III.   STANDARD OF REVIEW

A Special Master's Report is subject to *de novo* review by this Court.[33]

---

[29]   *Id.*

[30]   Special Master's Report at 25–26. *See also* Plaintiffs' Br. in Supp. of Their Exceptions to the Special Master's Final Report and Recommendation Ex. 32 (Defs.' Notice of Exceptions to the Special Master's April 7, 2017 Draft Report and Recommendation Regarding Jurisdictional Discovery) at 6–8 (discussing how each KPMG entity did no work in Delaware relating to the Citigroup and/or Banamex audit).

[31]   Special Master's Report at 27. The Special Master did allow Plaintiffs to have additional jurisdictional discovery on certain insurance and indemnity agreements between and amongst the KPMG entities. *See id.* at 30.

[32]   Del. Super. Ct. Civ. R. 122(a) ("Exceptions [to the Master's Final Report] shall be filed within 10 days after notice of the filing of the final report has been mailed to the attorneys.").

[33]   Del. Super. Ct. Civ. R. 122(c).

-9-

## IV. DISCUSSION

After careful *de novo* review of the Special Master's Report and Recommendation, the Court adopts it in whole.

The Plaintiffs bear the burden of showing a basis for the Court's exercise of jurisdiction over a nonresident. To that end, Plaintiffs must show that "(1) there is a statutory basis for exercising personal jurisdiction; and (2) subjecting nonresident defendants to jurisdiction in Delaware would not violate the Due Process Clause of the Fourteenth Amendment."[34]

The burden of establishing jurisdiction "does not refer to a pleading burden, but rather to the evidentiary burden of proof on the issue of defendant's amenability to suit."[35] "As a plaintiff does have an evidentiary burden, [it] may not be precluded from attempting to prove that a defendant is subject to the jurisdiction of the court, and may not ordinarily be precluded from reasonable discovery in aid of mounting such proof."[36] "Only where the facts alleged in the complaint make any claim of personal jurisdiction over defendant frivolous, might the trial court, in the exercise of its discretionary control over the discovery process, preclude reasonable

---

[34]     *Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795, at *4 (Del. Ch. Jan. 31, 2011).

[35]     *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991).

[36]     *Id.* at 539.

-10-

discovery in aid of establishing personal jurisdiction."[37] Delaware and federal courts have recognized that as long as a plaintiff's claim is not "clearly frivolous," the Court should allow some discovery for the limited purpose of determining jurisdictional ties.[38] To that end, the Court should liberally grant Plaintiffs' processes sought to establish personal jurisdiction.

The Court, however, "may exercise its sound discretion in delineating the appropriate scope of discovery."[39] "Because, as a general matter, '[t]he scope of allowable discovery, of course, is tied to the issues presented in the litigation,' jurisdictional discovery here must relate to the factual allegations in the Complaint and to the question of personal jurisdiction."[40] Plaintiffs "may not utilize 'the benefit of jurisdictional discovery so [they] can fish for a possible basis for this court's jurisdiction.'"[41]

---

[37] *Id. See In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 816 n.195 (Del. Ch. 2009) ("Without a non-frivolous ground for jurisdiction, jurisdictional discovery is not appropriate.").

[38] *See Hart Holding Co. Inc.*, 593 A.2d at 539; *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3rd Cir.1983); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003).

[39] *Reid*, 2011 WL 378795, at *4 (quoting *In re Tyson Foods, Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sept. 11, 2007)).

[40] *Id.* (quoting *Cal. Pub. Employees' Ret. Sys. v. Coulter*, 2004 WL 1238443, at *1 (Del. Ch. May 26, 2004)).

[41] *Id.* (quoting *In re Am. Int'l Gp., Inc.*, 965 A.2d at 816 n.195). *See Hedger v. Medline Industries, Inc.*, 2017 WL 396770 at *8 (Del. Super. Ct. Jan. 27, 2017) (parties "may not go on a 'fishing expedition' in search of a jurisdictional hook").

Plaintiffs have made several attempts to establish personal jurisdiction over two foreign corporations and a Delaware corporation using a unique "joint venture" theory. Unfortunately for Plaintiffs, they have failed to establish the requisite nexus between the Defendants to show why this Court should exercise personal jurisdiction over the two foreign entities. The Court is satisfied that the Special Master has properly tailored this particular jurisdictional discovery consistent with the Court's previous order and applicable law. And, as the Special Master pointed out, Plaintiffs still have access to the parties' insurance and indemnity agreements as a tool to establish personal jurisdiction.

## V. CONCLUSION

For the reasons set forth above, the Court agrees with the Special Master, and **ADOPTS** the Special Master's Final Report and Recommendation. And, therefore, the Court **DENIES** Plaintiffs' Notice of Exceptions to the Special Master's Final Report and Recommendation.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

-12-