# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| HIGHWAY TO HEALTH, INC. and ALAN KRIGSTEIN, SHELDON KENTON, SCOTT BEACHAM, MOSES DODO, DIEGO FERNÁNDEZ, MORGAN KENDRICK, MATTHEW SHAFFER, AND MAUREEN SULLIVAN, in their capacities as members of the Board of Directors of HIGHWAY TO HEALTH, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2018-0707-AGB |
| PETER J. BOHN, ANDREW G. CONN, FRANK T. GILLINGHAM, MICHAEL N. HARTUNG, LAURA HILTON, ROBERT M. HOWARD, DON JOSEPH, ANGELO MASCIANTONIO, MICHAEL D. MUNROE, DOROTHY NYLAND, ANDREW A. ORR, JR., GERRY SCHAAFSMA, BRENDAN SHARKEY, and ALEXANDER WOOD, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: January 7, 2020
Date Decided: April 15, 2020

Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Brian W. Shaffer and John M. Lupton IV, MORGAN, LEWIS & BOCKIUS LLP Philadelphia, Pennsylvania; *Attorneys for Plaintiffs Highway to Health Inc., Alan Krigstein, Sheldon Kenton, Scott Beacham, Moses Dodo, Diego Fernández, Morgan Kendrick, Matthew Shaffer, and Maureen Sullivan.*

Jami B. Nimeroff, BROWN MCGARRY NIMEROFF LLC, Wilmington, Delaware; Mary Kay Brown and Raymond McGarry, BROWN MCGARRY NIMEROFF LLC, Philadelphia, Pennsylvania; *Attorneys for Defendants Peter J. Bohn, Andrew G. Conn, Frank T. Gillingham, Michael N. Hartung, Laura Hilton, Robert M. Howard, Don Joseph, Angelo Masciantonio, Michael D. Munroe, Dorothy Nyland, Andrew A. Orr, Jr., Gerry Schaafsma, Brendan Sharkey, and Alexander Wood.*

**BOUCHARD, C.**

In 2013, Highway to Health, Inc. issued stock appreciation rights in the company to certain of its employees as part of a larger transaction. The contract governing the stock appreciation rights requires the company to appraise their value annually.

In 2016, the company changed the appraiser it had been using to perform the valuations. Recipients of the stockholder appreciation rights, who contend that the company did not have the right to change the appraiser, became concerned when the new appraiser rendered valuations significantly lower than the previous appraiser.

On September 5, 2018, counsel for the recipients asked the company to mediate their dispute. A few weeks later, the company filed this action seeking a declaratory judgment that the board did not breach any fiduciary duty or any contractual obligation owed to the recipients and that the new appraiser's valuations are binding.

Defendants consist of fourteen recipients of the stock appreciation rights. None of them are Delaware residents. They have moved to dismiss the complaint for lack of personal jurisdiction. The company contends this court has personal jurisdiction over defendants under the Delaware long-arm statute and the forum selection clause in an agreement that was part of the 2013 transaction, which names them as limited third-party beneficiaries. The court concludes otherwise for the reasons discussed below and thus grants the motion to dismiss.

1

## I. BACKGROUND

The facts recited in this opinion come from the allegations of the Second Verified Amended Complaint (the "Complaint"), documents incorporated therein, and affidavits submitted by the defendants.

### A. The Parties

Plaintiff Highway to Health, Inc. ("Highway" or the "Company") is a Delaware corporation with its principal place of business in King of Prussia, Pennsylvania.[1] Highway provides travel and medical insurance to individuals and companies on a short-term and long-term basis.[2] The eight individual plaintiffs are members of Highway's board of directors. They are: Alan Krigstein, Sheldon Kenton, Scott Beacham, Moses Dodo, Diego Fernández, Morgan Kendrick, Matthew Shaffer, and Maureen Sullivan (together with the Company, "Plaintiffs").[3]

Defendants are fourteen current and former employees of Highway who were granted Stock Appreciation Rights ("SARs") in agreements between the Company and each defendant (the "Award Agreements"), which incorporate the terms and conditions of the Stock Appreciation Rights Plan (the "SARs Plan").[4] They

---

[1] Second Verified Am. Compl. ("Compl.") ¶ 12 (Dkt. 38).

[2] *Id.*

[3] *Id.* ¶¶ 13-20.

[4] *Id.* ¶ 1; *see also id.* Ex. B ("Award Agreement"), at 1 ("The Award is subject to the terms and conditions set forth in this Award Agreement . . . and the [SARs] Plan.").

are: Peter J. Bohn, Andrew G. Conn, Frank T. Gillingham, Michael N. Hartung, Laura Hilton, Robert M. Howard, Don Joseph, Angelo Masciantonio, Michael D. Munroe, Dorothy Nyland, Andrew A. Orr, Jr., Gerry Schaafsma, Brendan Sharkey, and Alexander Wood (collectively, "Defendants").[5] Of the fourteen Defendants, one resides in the United Kingdom, another in Colorado, and twelve in Pennsylvania.[6] None of them reside in Delaware.

## B. The SARs Plan

On November 13, 2013, the Company and its stockholders entered into a Stock Purchase Agreement with Bupa Investments Overseas Limited ("Bupa"), by which Bupa purchased 49% of the Company's common stock (the "Bupa Transaction").[7] The transaction closed on December 17, 2013.[8]

The SARs Plan was established in connection with the Bupa Transaction for the benefit of existing employees of the Company who cashed in stock options and/or sold their shares of the Company as part of the transaction.[9] As memorialized in the Second Amended and Restated Stockholders Agreement (the "Stockholders

---

[5] *Id.* ¶¶ 21-34.

[6] Defs.' Reply Br. Exs. A-N ¶ 1 (Defendants' declarations) (Dkt. 45).

[7] Compl. ¶ 59.

[8] *Id.*

[9] *Id.* ¶ 42.

Agreement"), "the parties to the Bupa Transaction decided to provide certain employees of the Company with the opportunity to receive grants of cash-settled SARs in an effort to incentivize the employees' contribution to the growth of the Company and thus align their economic interests with those of the Company's stockholders."[10]

The SARs Plan and the Award Agreements govern the grant of the SARs, the valuation of the Company's common stock, and the exercise of the SARs. Under the SARs Plan, the value of the SARs is tied to the annually appraised value of the common stock of the Company.[11] The SARs Plan and the Award Agreements also provide that the "board of directors' fiduciary duties owed to stockholders shall apply with equal force to Participants with outstanding SARs as if the Participants were stockholders."[12]

## C. The Mediation Proposal

On September 5, 2018, counsel representing the original twenty-two individuals who held SARs (the "SARs Holders")[13] sent a letter to the chairman of

---

[10] *Id.*

[11] *Id*. Ex. A ("SARs Plan") § 8.

[12] *Id.* § 13.3; Award Agreement § 11.

[13] All twenty-two of the original SARs Holders were named as defendants in the initial complaint. In March 2019, the Company entered into Mutual Specific Release Agreements with eight of these individuals and voluntarily dismissed them from this action. Compl. ¶¶ 7-8; Dkt. 9.

Highway's board of directors questioning the board's appointment of a new appraiser in 2016 given that "the Plan contemplates the same Appraiser performing all of the valuations required under the Plan" and expressing concerns about the valuations performed by the new appraiser.[14] The letter offered to resolve the dispute through private mediation while recognizing that the Company was not obligated to do so, and noted that the board owed them the same fiduciary duties as stockholders: "We understand that the Company is under no obligation to mediate this dispute. We also know, however, that each member of the Board of Directors of [Highway] owes the SARs Holders fiduciary duties as if they were actual stockholders."[15] The court refers to this letter hereafter as the "Mediation Proposal."

## D.    The Litigation

On September 28, 2018, a few weeks after receiving the Mediation Proposal, the Company filed its initial complaint in this action. It sought a declaratory judgment that the board did not breach any fiduciary duty owed to the SARs Holders in connection with the SARs Plan, that the board and Company did not breach any contractual obligation to the SARs Holders arising from the SARs Plan or Award

---

[14] Compl. Ex. C, at 2-3.

[15] *Id.* at 3.

Agreements, and that the appraiser's year-end 2015, 2016, and 2017 valuations are binding on all parties.[16]

Plaintiffs amended the initial complaint twice, filing the Complaint operative here on July 30, 2019. The Complaint added to the requests for relief sought in the initial complaint a request for declaratory relief that the appraiser's year-end 2018 valuation, which was completed on May 14, 2019, is binding on all parties.[17]

On July 31, 2019, Defendants moved to dismiss the Complaint under Court of Chancery Rules 12(b)(1), 12(b)(2), and 12(b)(7) for lack of subject matter jurisdiction, lack of personal jurisdiction, and the failure to join necessary parties.[18] The court heard argument on the motion on January 7, 2020.

## II.    ANALYSIS

For the reasons discussed below, the court concludes it does not have personal jurisdiction over Defendants. The court thus does not reach the other two grounds Defendants have advanced for dismissal of this action.

---

[16] Dkt. 1.

[17] Compl. ¶¶ 10, 109.

[18] Dkt. 40.

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[19]

> In ruling on a Rule 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record. If . . . no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff.[20]

Plaintiffs assert two bases under which Defendants are subject to personal jurisdiction in Delaware: (i) the Delaware long-arm statute and (ii) the forum-selection clause in the Stockholders Agreement. The court addresses each argument in turn.

## A.     The Delaware Long-Arm Statute

Before the court may properly exercise personal jurisdiction over a nonresident under the Delaware long-arm statute, Plaintiffs must show that: "(1) there is a statutory basis for exercising personal jurisdiction; and (2) subjecting the nonresident defendant[s] to jurisdiction in Delaware would not violate the Due Process Clause of the Fourteenth Amendment."[21]   Because this

---

[19] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[20] *Id.* (footnotes and quotation marks omitted).

[21] *Reid v. Siniscalchi*, 2011 WL 378795, at *4 (Del Ch. Jan. 31, 2011) (citation omitted) (alteration in original).

burden falls on Plaintiffs, they are "entitled to 'reasonable discovery in aid of mounting such proof' that jurisdiction over [Defendants] in this Court is proper."[22] In this case, Plaintiffs made no effort to obtain such discovery.

Plaintiffs rely exclusively on a single provision of the Delaware long-arm statute: Section 3104(c)(1). Under that provision, a court may exercise specific personal jurisdiction over a nonresident who, "in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State[.]"[23] "[T]o establish personal jurisdiction pursuant to Section 3104(c)(1), a plaintiff must demonstrate both that: '(1) the nonresident transacted some sort of business in the state, and (2) the claim being asserted arose out of that specific transaction.'"[24] Focusing on the first requirement, this court has explained that "[i]n order for this Court to exercise jurisdiction under § 3104(c)(1), some act must actually occur in Delaware."[25]

The Company argues that the "cumulative effect" of the following "actions and contacts with Delaware is sufficient to subject [Defendants] to personal

---

[22] *Id.* (citing *Hart Hldg. Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)).

[23] 10 *Del. C.* § 3104(c)(1).

[24] *EBP Lifestyle Brands Hldgs. Inc. v. Boulbain*, 2017 WL 3328363, at *3 (Del. Ch. Aug. 4, 2017) (quoting *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *7 (Del. Ch. May 7, 2008)).

[25] *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009) (internal quotation marks and citations omitted).

jurisdiction in this state:" (i) Defendants "originally held shares of a closely-held Delaware corporation and agreed to sell that stock;" (ii) both the SARs Plan and Award Agreements are governed by Delaware law and "contain a provision extending the Board's fiduciary duties to Defendants;" and (iii) through the Mediation Proposal, "Defendants availed themselves of the benefits of Delaware corporate law by invoking the Board's fiduciary duties."[26] Relying heavily on *NRG Barriers, Inc. v. Jelin*,[27] Highway argues that given "this mix of related facts, the defendants should not have been surprised to be hailed into a Delaware court."[28]

In *NRG*, a closely held Delaware corporation sought a declaration that the Stock Purchase Agreement with its minority shareholders was valid and binding.[29] The *NRG* court found it had personal jurisdiction over the nonresident defendants because (i) they held shares in the Delaware corporation, (ii) they entered into the Stock Purchase Agreement with the Delaware corporation to sell their shares, (iii) the Stock Purchase Agreement had a Delaware choice-of-law provision, and (iv) "Delaware lawyers participated in drafting the Stock Purchase Agreement and rendered legal advice with respect to Delaware law for the express purpose of

---

[26] Pls.' Opp'n Br. 11-13 (Dkt. 44).

[27] 1996 WL 377014 (Del. Ch. July 1, 1996).

[28] Pls.' Opp'n Br. 10.

[29] 1996 WL 377014, at *1.

assuring the parties their agreement would comply with the law of the parties' choice."[30]  The mix of factual allegations before the court in this case have some similarities to *NRG*, but differ in significant ways that are fatal to attempting to satisfy Section 3104(c)(1) of the Delaware long-arm statute.

First, unlike in *NRG*,[31] the underlying dispute in this case does not concern a challenge to the capital structure of a Delaware corporation.  Rather, this case involves a *contractual* dispute concerning the value of the SARs, which is determined annually based on an appraisal of Highway's common stock under the SARs Plan.  As a factual matter furthermore, not all Defendants originally held shares in Highway, as defendants did in *NRG*,[32] and those who did hold stock in Highway did not sell their shares to an existing director and shareholder of a closely held Delaware corporation like in *NRG*, but sold their shares to a company organized

---

[30] *Id.* at *2.

[31] *See NRG Barriers, Inc. v. Jelin*, 1996 WL 451319, at *1 (Del. Ch. Aug. 6, 1996) ("Plaintiff, NRG Barriers, Inc. brought this action seeking a declaration that a January 2, 1990 Stock Purchase Agreement between it and its minority shareholders is a valid and binding agreement which prevents the former minority shareholders from claiming any interest in NRG Barriers, Inc.").

[32] Compl. ¶ 42; *NRG*, 1996 WL 377014, at *2.  Defendant Michael Munroe never held stock in Highway.  Defs.' Reply Br. Ex. I ¶ 4.  The remaining Defendants last held stock over six years ago.  Defs.' Reply Br. Exs. A, C-H, J-N ¶ 4; *id.* Ex. B ("Decl. of Andrew G. Conn") ¶ 5.

under the laws of England and Wales that was not a stockholder of Highway at that time.[33]

Second, the Delaware choice-of-law and fiduciary duty provisions in the SARs Plan and Award Agreements may be relevant considerations if accompanied by other facts showing that something actually occurred in Delaware, but they are not sufficient by themselves to confer personal jurisdiction under Section 3104(c)(1). This court has explained: "It is also well established that a choice of Delaware law provision in a contract is not, of itself, a sufficient transaction of business in the State to confer jurisdiction under (c)(1)."[34] The fiduciary duty owed to the SARs Holders, moreover, is contractually-created and uses Delaware law as a measure of a breach "*as if* the Participants were stockholders."[35] In other words, the fiduciary duty provision is, in effect, itself a choice-of-law provision.

---

[33] *See* Compl. Ex. D, third recital; Decl. of Andrew G. Conn ¶ 5.

[34] *Mobile Diagnostic*, 972 A.2d at 805 (citing *Intellimark, Inc. v. Rowe,* 2005 WL 2739500, at *2-3 (Del. Super. Oct. 24, 2005)); *see also Summit Investors II, L.P. v. Sechrist Indus., Inc.*, 2002 WL 31260989, at *4 (Del. Ch. Sept. 20, 2002) (holding that a Delaware choice of law provision is insufficient to satisfy the Constitutional minimum contacts test).

[35] *See* SARs Plan § 13.3 ("Notwithstanding anything in the Plan to the contrary, the provisions of Delaware law with respect to a board of directors' fiduciary duties owed to stockholders shall apply with equal force to Participants with outstanding SARs *as if the Participants were stockholders* and the SARs were shares of Common Stock and shall be applied consistently with the Company's Conflict of Interest and Confidentiality Policy for its Board of Directors and Board Observers.") (emphasis added); Award Agreement § 11 (same).

Third, Plaintiffs' characterization of the Mediation Proposal as "yet another contact with Delaware" is unsubstantiated.[36] The letter, which is stamped with a header stating that it was "For Settlement Purposes Only," was sent from the Philadelphia office of Defendants' counsel to the Company's board chairman at a Pennsylvania address.

Fourth, and most importantly, the *NRG* court found that "Delaware lawyers were substantially involved in drafting the agreement."[37] Here, by contrast, Plaintiffs concede they "do not have evidence that Defendants involved Delaware counsel in their review of the SARS Plan or Award Agreements."[38] Indeed, Defendants have submitted declarations attesting that they "did not negotiate" and "did not retain a Delaware lawyer to negotiate, draft or review" either the SARs Plan or the Award Agreements on their behalf.[39]

As mentioned previously, for this Court to exercise jurisdiction over Defendants under Section 3104(c)(1) of the Delaware long-arm statute, "some act must actually occur in Delaware."[40] Considered in their totality, Plaintiffs' factual

---

[36] Pls.' Opp'n Br. 13.

[37] 1996 WL 377014, at *4.

[38] Pls.' Opp'n Br. 13.

[39] Defs.' Reply Br. Exs. A, C-N ¶¶ 5-6. The wording of the Declaration of Andrew G. Conn is somewhat different, but conveys the same point. *See* Decl. of Andrew G. Conn ¶¶ 6-7.

[40] *Mobile Diagnostic*, 972 A.2d at 804 (internal quotation marks and citations omitted).

allegations establish little more than that the Defendants received SARs pursuant to contracts governed by Delaware law when most of them (but not all) sold their shares of a Delaware corporation to a foreign entity about six years ago. Critically, these factual allegations fail to demonstrate that *any act actually occurred in Delaware* with respect to the dispute in this case. Accordingly, Plaintiffs have failed to make a *prima facie* showing that Defendants are subject to the jurisdiction of this court under Section 3104(c)(1) of the Delaware long-arm statute.

## B. The Stockholders Agreement

Plaintiffs' second argument is that Defendants are subject to personal jurisdiction in Delaware as express third-party beneficiaries of the Stockholders Agreement, which contains a Delaware forum selection clause.[41] To be clear, Defendants are not signatories to the Stockholders Agreement. It is a contract by and among Highway and the four stockholders of the Company after Defendants sold their shares in connection with the Bupa Transaction, *i.e.*, Blue Cross Blue Shield Association; International Plan Solutions, LLC; Arcus Enterprises, Inc.; and Bupa.[42]

Section 23 of the Stockholders Agreement contains the forum selection clause. It states, in relevant part, that:

---

[41] Compl. ¶ 41.

[42] *Id.* Ex. D, at 1, 17.

13

> Each of the parties submits to the nonexclusive jurisdiction of the United States District Court for the District of Delaware and of any Delaware State court sitting in the State of Delaware, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated herein and agrees that all claims in respect of such action or proceeding may be heard and determined in any such court.[43]

Section 28 of the Stockholders Agreement, entitled "SARs Plan," acknowledges that the Company adopted the SARs Plan, issued SARs to certain employees of the Company, and deems the SARs Holders to be "express third party beneficiaries" for certain limited purposes:

> The holders of SARs issued pursuant to the SARs Plan are express third party beneficiaries of Section 5(c) and this Section 28, and this Section 28 shall not be amended in any manner, and Section 5(c) shall not be amended in any way affecting the interests of the holders of the SARs, in each case without the written consent of a majority of the outstanding SARs under the Company's SARs Plan.[44]

Section 5(c) of the Stockholders Agreement addresses the consideration the SARs Holders would receive, consistent with the SARs Plan, in connection with a sale of Highway before the SARs expire. [45]

---

[43] *Id.* § 23.

[44] *Id.* § 28.

[45] *Id.* § 5(c).

14

It is well established that a party may consent to jurisdiction through a contract containing a forum selection clause.[46] Delaware courts use a three-part inquiry to determine whether a nonsignatory to an agreement is bound by a forum selection clause in the agreement: (i) is the forum selection clause valid; (ii) are the nonsignatories third-party beneficiaries; and (iii) does the claim arise from their standing relating to the agreement?[47]

Defendants do not dispute the first element. Defendants take issue with the second element notwithstanding language in the Stockholders Agreement stating that SARs Holders are "express third party beneficiaries" for certain purposes.[48] It is not necessary to address this issue because, assuming *arguendo* that Defendants are limited third-party beneficiaries of the Stockholders Agreement, the third element of the test plainly has not been satisfied here.

With respect to the third element, it is settled law that "the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum

---

[46] *Capital Gp. Cos. Inc. v. Armour*, 2004 WL 2521295, at *2 (Del. Ch. Oct. 29, 2004, revised Nov. 3, 2004).

[47] *Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010) (citing *Armour,* 2004 WL 2521295, at *5).

[48] Defs.' Opening Br. 21-24 (Dkt. 41).

selection clause to be enforceable against the non-signatory."[49]  Plaintiffs fail to satisfy this element because their claims do not arise from the Stockholders Agreement.  Plaintiffs have not requested any relief with respect to the Stockholders Agreement, let alone put at issue the circumstances giving rise to the SARs Holders' rights as third-party beneficiaries under Sections 5(c) and 28 of that agreement.[50]  Because Plaintiffs' claim for declaratory relief does not arise from the Stockholders Agreement, they cannot invoke the forum selection clause in that contract to establish personal jurisdiction over the SARs Holders in this case.

## III. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction is **GRANTED**.

**IT IS SO ORDERED.**

---

[49] *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 n.15 (Del. Ch. May 14, 2009) (Strine, V.C.) (discussing authorities).

[50] *See* Compl. ¶¶ 99-110.